ᗡᗡᓚᓂᗡ



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Roy L. Hill
County Attorney
Ballinger, Texas

Dear Sir:

Opinion No. O-3933
Re: Is a club, managed and operated
in dry territory, as outlined,
legally operated under the Texas
Liquor Control Act?

Your letter of September 4, 1941, requesting an
opinion of this Department on the above stated question, reads
in part as follows:

"I have a question I desire to submit to you for an
opinion, in regard to the operation of a beer club, in a
dry territory. A hypothetical statement of the case is
as follows:

"A number of persons have organized themselves (how-
ever there is very little organization) for the purpose
of meeting in a centralized location, in a room or building,
in which room is a number of lockers; each member has a key
to his individual locker, in fact this building has a number
of lockers, in fact one for each member of the organization,
and each has an individual lock and key. He pays the opera-
tor say 50¢ a month rent for this locker. In this locker
he keeps his beer, consisting of a case, or portion of case,
to which locker he has access at any time he desires. The
entire building is looked after by one person.

"The beer is usually put in the locker by the man who
is manager of this organization, when requested so to do
by the locker holders. The beer belongs to each individual,
and is identified when placed in ice box, by a label on each
bottle, so that he will be certain to get his beer when he
goes to the cooler after it. The member, or rather the
owner of the locker compartments, may enjoy a bottle of
beer at his pleasure. I think this is about the set up.

Hon. Roy L. Hill, page 2

"I hardly think it necessary to set out the liquor statutes of the State, and I would like to have your opinion as to the legality of this kind of set up, bearing in mind the statutes authorizing a person to have one case of beer, or one quart of whiskey, without the legal presumption that he did possess it for the purpose of sale. No beer is sold in the above place by any one. The manager of the club serves the beer to the various members seated at the table, but the beer belongs to each individual, and aside from the two or three bottles kept in the cooler, it is all locked in the locker of the individual owner.

"Now bearing in mind the law applicable to the possession and transportation of whiskey: Is a club managed and operated as outlined above, in dry territory, legally operated under our liquor laws. The officers of this county are confronted with two or three situations similar to the above set up, and we desire that you advise us as to whether or not the operation of such joint adventure, handling such liquors and beer in the manner outlined, would be a violation of the liquor laws of Texas?"

Your letter of September 11, 1941, supplementing the above quoted letter, reads in part as follows:

"The beer is supposed, or claimed to be brought into this county by automobile, and one case at a time. In other words, each member of the club plan buys and brings his case of beer to the club, and either puts his case of beer in his individual locker or the person in charge of the building places it in the locker for him at his request. The beer is delivered to the building as just stated, case at a time, i. e., each individual brings his case of beer there. As to the amount possessed by any individual, will say, just one case at a time. Each locker is individually owned, or rented, and used. One locker to each individual, for his personal use and benefit. The beer is bought individually, one case at a time, and transported from wet territory into this county (dry) by the individual owner of the beer and locker.

Hon. Roy L. Hill, page 3

"My information is that one person, called the manager, owns or leases the building in which he has constructed about 50 individual compartments, containing individual locks, for the use of each locker, he receives from 50 cents to $1.00 each per month. The building is locked, but the individual compartment owners each have a key to the main building, in addition to having their separate keys for their locker. The manager keeps the beer iced for them, and he pays the ice bill, rent, and lights, from the proceeds of his locker rentals, according to the plan of operation. The manager does not have a key to the locker. The beer is cooled in one large ice box, to which all members, or locker owners, have access for the purpose of cooling their beer or having it cooled."

The "Texas Liquor Control Act" is set forth in Vernon's Annotated Penal Code, Title 11, Chapter 8, Articles 666-1 — 667-27, inclusive. After carefully considering the act as a whole, we fail to find any provision contained therein, specifically and affirmatively authorizing the organization, maintenance and operation of a club as above described. Neither do we find any provision expressly prohibiting the same. The Court of Criminal Appeals of this State has heretofore rendered several decisions relative to clubs organized and operated under certain facts as are herein mentioned. We direct your attention to a few of these cases.

In the case of Adkins v. State, 95 S. W. 506, the material facts were substantially as follows:

A group of men formed a club. These men in turn hired a steward at a fixed salary. The steward ordered beer for the members of the club and placed such beer in the clubroom for them. Each member of the club paid one dollar for a membership and received tickets which represented his interest in the beer the steward ordered. After the keg of beer arrived at the clubhouse a ticket was placed in the box and a glass of beer was drawn by any member who desired one, each ticket representing a glass of beer. The beer which was ordered by the steward was ordered for the purchasers of the ticket and paid for by said purchasers.. The Court of Criminal Appeals held in this case that the facts established a sale of beer by the steward each time that a glass of beer was drawn by a member of the club.

Hon. Roy L. Hill, page 4

In the case of Sutton v. State, 40 S.W. 501:

A certain firm kept what was known as "Temperance Hall". Certain parties paid fifty cents for the privilege of buying beer from the firm at the ordinary retail price. The fifty cents paid to become a member of the alleged club was all the money ever paid into the concern, except the usual price for beer when purchased. Such firm received 1630 dozen bottles of beer in five months, kept the stock replenished with the money arising from sales to members, and its pay was the profits. The Court of Criminal Appeals of this State held that this was clearly an evasion of the local option law.

In the case of Krnavek v. State, 41 S. W. 612, the facts were substantially as follows:

After the enactment of a local option law, a club was incorporated for social and literary purposes, and to provide the convenience of a clubroom. It had a billiard table, a domino table and twelve books, and took a semi-weekly paper. The club bought large quantities of intoxicants, and employed an ex-saloon keeper at a monthly salary to sell them at retail, to its members only, from the bar formerly owned by him, and the proceeds of such sales became the property of the club. The Court of Criminal Appeals of this State held that the club was formed for the purpose of evading the local option law.

In the case of Feize v. State, 95 S. W. 506:

A club was incorporated for social purposes. The manager of such club devoted his time to the management of its affairs. A membership fee of $1.00 was paid to him by each member. The members of the club obtained beer by purchasing tickets. The beer was obtained the day after the purchase of the tickets. The manager instructed the members how to order beer by stating that when the members wanted beer, they would put money in a box and take out a ticket for each nickel, and that could be procured at the clubroom the following night. The court held that the club members, when they paid their money into the treasury, parted with it to the club, so that when it kept out the money it bought beer on its own behalf, making the manager liable for a sale.

In the case of Adams v. State, 145 S. W. 940, the Court of Criminal Appeals of this State held:

Where a club purchased liquors, bought with money in the treasury, a distribution of the same to members at the usual price constituted a sale within the prohibition laws.

In the case of Williams v. State, 103 S. W. (2d) 380, the facts were substantially as follows:

The defendant was found in the possession of ten cases of beer, in the city of Abilene, Taylor County, Texas. At the time defendant was the manager of what was known as the "Abilene Athletic Club", which had approximately 250 members, a prerequisite to membership being that a written application had to be made which called for a deposit of five dollars by the applicant with said manager. Upon being approved as a member of the club, the applicant paid a monthly sum of $1. dues, the primary purpose of the $5. mentioned being that it was to be used in the purchase of merchandise, and also that if a member withdrew he was entitled to the return of his $5. deposit, provided it had not been consumed in the individual purchase of merchandise or in the payment of dues. When the $5. deposit had been consumed, it was also understood that the member should deposit a like sum; also the general property and activities of the club are set out; it is shown that the manager was permitted to sell chewing gum, cigars, cigarettes, sandwiches, coffee, milk, and soft drinks and put the profits of such business into the payment of part of his salary as manager. It is further set out in the agreed statement of facts in this case that some of the members of said athletic club had directed appellant to have on hand in said club beer for their consumption, and that the beer upon which this prosecution was based had been ordered by various members, and that the defendant had gone to Sweetwater, and acting as manager of said club and agent for the members of said club, had purchased with the money of said members said beer to bring back for the members of the club. Each member was to pay the manager fifteen cents per container for said beer when he received his beer at said club, and said fifteen cent deposit, if any, was deposited in "the members' deposit account", to replenish same and to be used in accordance with the direction of the members of the club. The manager received no profit from the sale of any beer, but from

the revenue, use and profit from the sale of merchandise was to pay all expenses of the operation of said club, the renting of the building and salaries of attendants. The Court of Criminal Appeals held in this case under the facts that the defendants possessed intoxicating liquors for the purpose of sale in a dry area.

We have quoted at length from a number of authorities in order that you may see it is always a question of fact as to whether parties are violating the Texas Liquor Control Act. The only place the facts can all be developed is in the trial court.

It may be if the facts were fully developed it would show that the keeper of the clubhouse actually has in his possession and under his control all of the beer that has been left there so he can place some in the ice box, and if so then he would be violating the provisions of the Texas Liquor Control Act.

Under Section 2 of article 666 of the Penal Code, which is the Texas Liquor Control Act, it is specifically provided that the provisions of said Act shall be liberally construed in order that the law may be enforced.

Since the question you have asked is based on presumption of what the facts really are we deem it unwise to give a categorical reply. As above stated the only tribunal that can pass upon the facts is the trial court and/or the jury, and until the facts are fully developed it is unwise to give a dogmatic answer as to what a jury or court would determine.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Ardell Williams
Assistant

AW:AMH